

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

January 9, 2007

The Honorable Harvey Hilderbran
Chair, Committee on Culture, Recreation,
    and Tourism
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0498

Re: Whether the Edwards Aquifer Authority may reduce groundwater withdrawal permit amounts for certain permit holders below the amount specified in section 1.16(e) of the Authority's enabling act when, if all permitted amounts are withdrawn, over 450,000 acre-feet of water will be withdrawn from the aquifer in a calendar year (RQ-0469-GA)

Dear Representative Hilderbran:

You ask about the power of the Edwards Aquifer Authority (the "Authority") to reduce groundwater withdrawal permit amounts for certain permit holders below the amount specified in section 1.16(e) of the Authority's enabling act when, if all of the permitted amounts are withdrawn, more than 450,000 acre-feet[1] of water will be withdrawn from the Edwards Aquifer in a calendar year.[2] We understand you to be particularly concerned about (1) existing irrigation users who, under section 1.16(e), are to receive permits that allow the withdrawal of not less than two acre-feet of water a year for each acre of land the user actually irrigated during the historical period[3] (whom we will refer to as "irrigation users") and (2) existing aquifer users who have operated wells for three or more years during the historical period and whose permits, under section 1.16(e), are to allow withdrawal of the average amount of water withdrawn annually during the historical period (whom we will refer to as "averagers"). *See* Act of May 30, 1993, 73d Leg., R.S., ch. 626, § 1.16(e), 1993 Tex. Gen. Laws 2350, 2361 [hereinafter the Act].

---

[1]"An acre-foot is the amount of water that would cover an acre of land to one foot, approximately 325,850 gallons." *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 624 n.1 (Tex. 1996).

[2]*See* Letter from Honorable Harvey Hilderbran, Chair, Committee on Culture, Recreation, and Tourism, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas (Mar. 16, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[3]An applicant for a regular permit must file a "declaration of historical use of underground water withdrawn from the aquifer during the historical period from June 1, 1972, through May 31, 1993." Act of May 30, 1993, 73d Leg., R.S., ch. 626, § 1.16(a), 1993 Tex. Gen. Laws 2350, 2361. We use the term "historical period" throughout this opinion to refer to the 21-year period beginning June 1, 1972 and ending May 31, 1993.

## I.    Constitutional and Statutory Provisions

### A.    Texas Constitution article XVI, section 59

Under article XVI, section 59(a) of the Texas Constitution, conserving and developing water are "public rights and duties" about which the Legislature may adopt appropriate laws. TEX. CONST. art. XVI, § 59(a). Subsection (b) authorizes the creation of conservation and reclamation districts "with the authority to exercise such rights, privileges and functions concerning the subject matter of this [section] as may be conferred by law." *Id.* § 59(b).

### B.    The 1993 Act creating the Edwards Aquifer Authority

#### 1.    Generally

Consistently with its authority under article XVI, section 59(b), the Legislature in 1993 created a "conservation and reclamation district, to be known as the Edwards Aquifer Authority, . . . in all or part of Atascosa, Bexar, Caldwell, Comal, Guadalupe, Hays, Medina, and Uvalde counties." Act § 1.02, at 2351;[4] *see also id.* § 1.01, at 2350–51 (articulating the Legislature's reasons for creating the district). The Authority generally has "all of the powers, rights, and privileges necessary to manage, conserve, preserve, and protect the [Edwards Aquifer][5] and to increase the recharge[6] of, and prevent the waste[7] or pollution[8] of water in, the aquifer" and "all of the rights,

---

[4]The Act has been amended by the following laws: Act of May 16, 1995, 74th Leg., R.S., ch. 524, 1995 Tex. Gen. Laws 3280, 3280; Act of May 29, 1995, 74th Leg., R.S., ch. 261, 1995 Tex. Gen. Laws 2505, 2505–17; Act of May 6, 1999, 76th Leg., R.S., ch. 163, 1999 Tex. Gen. Laws 634, 634–35; Act of May 25, 2001, 77th Leg., R.S., ch. 1192, 2001 Tex. Gen. Laws 2696, 2696–97; Act of May 27, 2001, 77th Leg., R.S., ch. 966, §§ 2.60–.62, 2001 Tex. Gen. Laws 1991, 2021–22; Act of June 1, 2003, 78th Leg., R.S., ch. 1112, § 6.01(4), 2003 Tex. Gen. Laws 3188, 3192–93. None of these amendments affect the portions of the 1993 Act that are relevant here.

[5]The 1993 Act defines the Edwards Aquifer as

> that portion of an arcuate belt of porous, water-bearing, predominately carbonate rocks known as the Edwards and Associated Limestones in the Balcones Fault Zone extending from west to east to northeast from the hydrologic division near Brackettville in Kinney County that separates underground flow toward the Comal Springs and San Marcos Springs from underground flow to the Rio Grande Basin, through Uvalde, Medina, Atascosa, Bexar, Guadalupe, and Comal counties, and in Hays County south of the hydrologic division near Kyle that separates flow toward the San Marcos River from flow to the Colorado River Basin.

Act § 1.03(1), at 2351; *see also id.* § 1.04, at 2353–55 (setting out the Authority's boundaries).

[6]The Act defines the term "recharge" to mean "increasing the supply of water to the aquifer by naturally occurring channels or artificial means." *Id.* § 1.03(18), at 2352.

[7]The Act defines the term "waste" to mean:

> (A)    withdrawal of underground water from the aquifer at a rate and in an amount that causes or threatens to cause intrusion into the reservoir of water unsuitable for agricultural, gardening, domestic, or stock raising purposes;

(continued...)

powers, privileges, authority, functions, and duties provided by the general law of this state, including Chapters 50, 51, and 52,[9] Water Code, applicable to an authority created under" article XVI, section 59 of the Texas Constitution. *Id.* § 1.08(a), at 2356 (footnotes added). The Act further requires the Authority's governing board to adopt rules as necessary to carry out the Authority's statutory powers and duties; to ensure compliance with permitting requirements and to regulate permits; and to issue orders enforcing the Act or the Authority's rules. *See id.* § 1.11(a)–(c), at 2358; *see also id.* § 1.09, at 2356–57 (describing the nine-member board of directors).

## 2.    Section 1.14: Limits on the total amount of water withdrawn

Section 1.14 of the Act provides specifically for withdrawals from the aquifer and is one of two sections that is particularly at issue in your request. *See* Request Letter, *supra* note 2, at 1. Subsection (a) expressly requires that authorizations to withdraw water be limited to:

---

[7](...continued)

> (B)  the flowing or producing of wells from the aquifer if the water produced is not used for a beneficial purpose;
>
> (C)  escape of underground water from the aquifer to any other reservoir that does not contain underground water;
>
> (D)  pollution or harmful alteration of underground water in the aquifer by salt water or other deleterious matter admitted from another stratum or from the surface of the ground;
>
> (E)  wilfully or negligently causing, suffering, or permitting underground water from the aquifer to escape into any river, creek, natural watercourse, depression, lake, reservoir, drain, sewer, street, highway, road, or road ditch, or onto any land other than that of the owner of the well unless such discharge is authorized by permit, rule, or order issued by the [Texas Commission on Environmental Quality] under Chapter 26, Water Code;
>
> (F)  underground water pumped from the aquifer for irrigation that escapes as irrigation tailwater onto land other than that of the owner of the well unless permission has been granted by the occupant of the land receiving the discharge; or
>
> (G)  for water produced from an artesian well, "waste" has the meaning assigned by Section 11.205, Water Code.

*Id.* § 1.03(21), at 2352; *see also id.* § 1.03(4), at 2351 (defining "beneficial use"); *infra* note 10 (quoting the Act's definition of "beneficial use").

[8]The Act defines the term "pollution" to mean "the alteration of the physical, thermal, chemical, or biological quality of any water in the state, or the contamination of any water in the state, that renders the water harmful, detrimental, or injurious to humans, animal life, vegetation, property, or public health, safety, or welfare or that impairs the usefulness of the public enjoyment of the water for any lawful or reasonable purpose." Act § 1.03(17), at 2352.

[9]Water Code chapter 52 was repealed in 1995 and its substance was moved to chapter 36 of the same code. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 933, §§ 2, 6, 1995 Tex. Gen. Laws 4673, 4679–701.

(1) protect the water quality of the aquifer;

(2) protect the water quality of the surface streams to which the aquifer provides springflow;

(3) achieve water conservation;

(4) maximize the beneficial use[10] of water available for withdrawal from the aquifer;

(5) protect aquatic and wildlife habitat;

(6) protect species that are designated as threatened or endangered under applicable federal or state law; and

(7) provide for instream uses, bays, and estuaries.

Act § 1.14(a), at 2360 (footnote added). With certain exceptions, subsection (b) limits the amount of permitted withdrawals through December 31, 2007 to 450,000 acre-feet per year:

> Except as provided by Subsections (d), (f), and (h) of this section and Section 1.26 of this article, for the period ending December 31, 2007, the amount of permitted withdrawals from the aquifer may not exceed 450,000 acre-feet of water for each calendar year.

*Id.* § 1.14(b), at 2360. The four exceptions listed in subsection (b)—section 1.14(d), (f), and (h) and section 1.26—allow the Authority to adjust the total amount of acre-feet withdrawn from the aquifer in certain circumstances:

- Section 1.14(d) authorizes the Authority, "in consultation with appropriate state and federal agencies," to "increase the maximum amount of withdrawals" if the Authority "determines that additional supplies are available." *Id.* § 1.14(d), at 2360.

- Under section 1.14(f), "[i]f the level of the aquifer is equal to or greater than 650 feet above mean sea level as measured at Well J-17 [located in Bexar County, *see id.* § 1.03(23), at 2352], the [A]uthority may authorize withdrawal from the San Antonio

---

[10]For the Act's purposes, the term "beneficial use" means "the use of the amount of water that is economically necessary for a purpose authorized by law, when reasonable intelligence and reasonable diligence are used in applying the water to that purpose." Act § 1.03(4), at 2351.

pool, on an uninterruptible basis, of permitted amounts. If the level of the aquifer is equal to or greater than 845 feet at Well J-27 [located in Uvalde County, *see id.* § 1.03(24), at 2353], the [A]uthority may authorize withdrawal from the Uvalde pool, on an uninterruptible basis, of permitted amounts." *Id.* § 1.14(f), at 2360. The additional withdrawals must be limited to ensure that "springflows are not affected during critical drought conditions." *Id.*

- Section 1.14(h) authorizes the Authority to implement, enforce, and revise water management practices, procedures, and methods to ensure that, "not later than December 31, 2012, the continuous minimum springflows of the Comal Springs and the San Marcos Springs are maintained to protect endangered and threatened species to the extent required by federal law." *Id.* § 1.14(h), at 2360.

- Section 1.26 requires the Authority to prepare a critical period management plan that distinguishes between discretionary and nondiscretionary use; requires that all discretionary use be reduced to the "maximum extent feasible"; requires "utility pricing, to the maximum extent feasible, to limit discretionary use by" water utility customers; and requires permitted or contractual users, "to the extent further reductions are necessary," to reduce nondiscretionary use in line with certain statutory priorities. *Id.* § 1.26, at 2363–64.

### 3.    Section 1.16 and others:  Permitting requirements

No person may withdraw water from the aquifer or construct a well without a permit from the Authority except "as provided by Sections 1.17 [allowing persons who own certain producing wells on the Act's effective date to continue to withdraw water until the Authority takes final action on permits] and 1.33 [exempting wells that produce no more than 25,000 gallons of water per day for domestic or livestock use from metering requirements]." *Id.* § 1.15(a)–(b), at 2360–61. A person who is required to obtain a permit but who withdraws water without a permit may be subject to an administrative or civil penalty and be enjoined. *See id.* §§ 1.37(a), .38, .40, at 2366, 2368.

The Act expressly authorizes the Authority to issue three types of permits: "regular permits, term permits, and emergency permits." *Id.* § 1.15(c), at 2361. The Act recognizes two types of regular permits: an "initial regular permit" and an "additional regular permit." *See id.* §§ 1.16, .18, at 2361, 2362. Your questions concern only initial regular permits.

To obtain an initial regular permit, section 1.16 requires an existing user to file "a declaration of historical use of underground water withdrawn from the aquifer" during the historical period. *Id.*

§ 1.16(a), at 2361; *see also supra* note 3 (defining "historical period" for purposes of this opinion). Upon receiving the declaration and the requisite fees, the Authority must grant an initial regular permit if the applicant has established "by convincing evidence beneficial use of underground water from the aquifer." Act § 1.16(d), at 2361. The "maximum rate and total volume of water that the water user may withdraw in a calendar year" is specified in each permit. *Id.* § 1.15(d), at 2361. Section 1.16(e) provides the maximum total volume of water certain types of users may be permitted to withdraw (each sentence is numbered in brackets for purposes of the analysis that follows):

> [1] To the extent water is available for permitting, the [Authority's governing] board shall issue the existing user a permit for withdrawal of an amount of water equal to the user's maximum beneficial use of water without waste during any one calendar year of the historical period. [2] If a water user does not have historical use for a full year, then the authority shall issue a permit for withdrawal based on an amount of water that would normally be beneficially used without waste for the intended purpose for a calendar year. [3] If the total amount of water determined to have been beneficially used without waste under this subsection exceeds the amount of water available for permitting, the [A]uthority shall adjust the amount of water authorized for withdrawal under the permits proportionately to meet the amount available for permitting. [4] An existing irrigation user shall receive a permit for not less than two acre-feet a year for each acre of land the user actually irrigated in any one calendar year during the historical period. [5] An existing user who has operated a well for three or more years during the historical period shall receive a permit for at least the average amount of water withdrawn annually during the historical period.

*Id.* § 1.16(e), at 2361.

## II.     Facts

You inform us that the Authority took applications for initial regular permits from 1996 through November 2005. Request Letter, *supra* note 2, at 1. After all the permits were issued, "it was determined that the sum of all these permits exceeded the 450,000 acre feet" withdrawal cap. *Id.* at 2. Indeed, according to the Authority, "[t]he total of all statutory minimums is 521,439.722" acre-feet per year.[11] To bring the total amount of permitted withdrawals down to 450,000 acre-feet

---

[11]Letter from Darcy A. Frownfelter, Kemp Smith L.L.P., on behalf of the Edwards Aquifer Authority, to Honorable Greg Abbott, Attorney General of Texas, at 7 (July 21, 2006) [hereinafter Authority Brief]; *accord* EDWARDS AQUIFER AUTHORITY, FACT SHEET: FINAL GROUNDWATER WITHDRAWAL PERMIT AMOUNTS ESTABLISHED 2 (Nov. 30, 2005), *available at* http://www.edwardsaquifer.org/pdfs/fact%20Sheets/Final%20Order%20Attachment.pdf (last visited Dec. 12, 2006).

per year, according to the Authority, it added "every permit holder's maximum historic use together and [then] proportionally reduc[ed] the sum of" the amount allowed under each regular permit.[12] The Authority's rules refer to the proportionally reduced withdrawal amount as "senior rights" or "uninterruptible withdrawal amount."[13] *See* EDWARDS AQUIFER AUTHORITY, EDWARDS AQUIFER AUTHORITY RULES §§ 702.1(b)(56), (64), 711.164(d), *available at* http://www.edwardsaquifer .org/pdfs/rules/Final_Rules.pdf (last visited Dec. 12, 2006) [hereinafter EDWARDS AQUIFER AUTHORITY RULES]. Under the Authority's rules, the amount of water that the Authority

> may permit to be withdrawn on an uninterruptible basis as senior rights pursuant to initial regular permits . . . shall not exceed 450,000 acre-feet for each calendar year under the following Aquifer conditions:
>
> (1) for wells in the San Antonio Pool, . . . the water level of the Aquifer as measured at well J-17 is equal to or greater than 650 feet above mean sea level;
>
> (2) for wells in the Uvalde Pool, . . . the water level of the Aquifer as measured at well J-27 is equal to or greater than 845 feet above mean sea level.

*Id.* § 711.164(a); *cf.* Act § 1.14(f), at 2360 (authorizing the Authority to allow withdrawals from the San Antonio pool if the water level at well J-17 is equal to or greater than 650 feet above mean sea level or from the Uvalde pool if the water level at well J-27 is equal to or greater than 845 feet above mean sea level). In some cases, the senior rights "fell below the statutory minimum provided in Section 1.16(e) of the Act." Request Letter, *supra* note 2, at 2.

To address the fact that some of the allotted senior rights fell below the withdrawal amounts that the fourth and fifth sentences of section 1.16(e) set out, the Authority granted permit holders interruptible, or "junior," rights that make up the difference between the statutory minimum and the proportionally reduced amount. *See* FACT SHEET ON SENIOR AND JUNIOR AMOUNTS, *supra* note 12; *see* EDWARDS AQUIFER AUTHORITY RULES §§ 702.1(b)(35)–(36), 711.164, .176. A junior-rights holder with a well in the San Antonio Pool may withdraw water under the junior rights "whenever the water level of the Aquifer as measured at well J-17 is greater than 665 feet above mean sea level"; a junior-rights holder with a well in the Uvalde Pool may exercise the junior rights "whenever the water level of the Aquifer as measured at well J-27 is greater than 865 feet above mean sea

---

[12]EDWARDS AQUIFER AUTHORITY, FACT SHEET: UNINTERRUPTIBLE ("SENIOR") AND INTERRUPTIBLE ("JUNIOR") AUTHORIZED AMOUNTS, AND INITIAL REGULAR PERMITS (Jan. 4, 2006), *available at* http://www.edwardsaquifer.org /pdfs/fact%20Sheets/Uninterruptible%20and%20interruptible%20amounts.pdf (last visited Dec. 12, 2006) [hereinafter FACT SHEET ON SENIOR AND JUNIOR AMOUNTS].

[13]The term "uninterruptible" is a misnomer; senior rights may, in fact, be reduced, but "**only** when the Authority declares a stage of the Demand Management/Critical Period Management Rules to be in effect." *Id.*; *see also* Act § 1.26, at 2363–64 (providing for a critical period management plan).

level." EDWARDS AQUIFER AUTHORITY RULES § 715.504(b)–(c). Thus, for example, an irrigation user whose senior rights allow the withdrawal of 1.6 acre-feet per year may be provided with junior rights allowing the user to withdraw an additional 0.4 acre-feet per year, bringing the total withdrawal amount allowed under the permit to 2 acre-feet of water per year (assuming the relevant well level is high enough), the number set out in section 1.16(e)'s fourth sentence. *See id.* § 711.176(b)(6).

### III. Analysis

Based on the Authority's actions, you pose three questions:

> 1) Is the [Authority] statutorily authorized to reduce the uninterruptible groundwater withdrawal rights of permit holders to an amount that is below their statutory minimum as provided in Section 1.16(e) of the Act?

> 2) Does the [Authority] have the statutory authority to issue a type of permit that contains interruptible "junior" withdrawal rights which are not specifically authorized or included in the types of permits authorized by the [Authority's] enabling legislation?

> 3) If the [Authority] can reduce permit holders to amounts below their statutory minimums, should these permit holders receive compensation?

Request Letter, *supra* note 2, at 2. Your third question raises an issue implicated in pending litigation. *See* Plaintiff's Original Petition for Review and Suit for Declaratory Relief and Inverse Condemnation, *777 Operating Co. v. Edwards Aquifer Auth.*, No. 05-10-17660-CV (38th Dist. Ct. Oct. 27, 2005). This office typically does not issue an opinion on a question that we know to be the subject of pending litigation. *See* Tex. Att'y Gen. Op. No. GA-0399 (2006) at 3 n.5. Consequently, we do not answer your third question.

In examining your remaining questions, we recognize that the Authority "may exercise only such powers" as the Legislature has expressly delegated to it "or which exist by clear and unquestioned implication." *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940); *accord Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Commc'ns Corp.*, 49 S.W.3d 520, 536 (Tex. App.—Corpus Christi 2001, pet. denied); *see also* Tex. Att'y Gen. Op. No. GA-0284 (2004) at 3 (limiting the powers of a waterway and navigation district to only those delegated by statute). On the other hand, a court will give "some deference" to an administrative agency's reasonable construction of an ambiguous statute that the agency is charged with enforcing. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006); *see also* Act § 1.11(a)–(c), at 2358 (delegating enforcement powers to the Authority).

### A.    Whether the Authority may reduce groundwater withdrawal rights to an amount below a statutory minimum

Section 1.16(e) provides permits for four types of users:  an existing user, a user without historical use for a full year, an irrigation user, and an averager.  *See* Act § 1.16(e), at 2361.  Your question requires us to consider whether, in light of the facts as we have assumed them, the Authority reasonably has determined that users whose withdrawal amounts are set in accordance with the fourth and fifth sentences of section 1.16(e)—irrigation users and averagers—are subject to proportional reduction.

The Texas Supreme Court twice has stated that irrigation users and averagers are not subject to a "downward adjustment" under section 1.16(e) if insufficient water is available. *Barshop*, 925 S.W.2d at 624 n.2; *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 731 (Tex. 2002).  In a 1996 case, *Barshop v. Medina County Underground Water Conservation District*, the court summarized section 1.16(e):

> The Act entitles an existing user to a permit for an amount of water equal to the user's maximum beneficial use of water during any one calendar year of the historical period, unless the sum-total amount of such use throughout the aquifer exceeds 450,000 acre-feet. If this occurs, the Authority is required to adjust proportionately the amount of water authorized for withdrawal under the permits to meet the cap.

*Barshop*, 925 S.W.2d at 624 (citations and footnote omitted).  In a footnote following this summary, the court states that "[a]n existing user can avoid this downward adjustment" in two circumstances:

> First, an existing user who has operated a well for three or more years during the historical period shall receive a permit for at least the average amount of water withdrawn annually during the historical period.  Second, an existing irrigation user shall receive a permit for not less than two acre-feet a year (approximately 650,000 gallons) for each acre of land the user actually irrigated in any one calendar year during the historical period.

*Id.* at 624 n.2 (citations omitted).  The court in 2002 repeated the footnote's substance in *Bragg v. Edwards Aquifer Authority*.  *See Bragg*, 71 S.W.3d at 731–32.

Given the court's interpretation, we must conclude that the Act unambiguously precludes the Authority from reducing withdrawal amounts for irrigation users below "two acre-feet a year for each acre of land the user actually irrigated in any one calendar year during the historical period." Act § 1.16(e), at 2361.  Likewise, the Authority may not reduce averagers' withdrawal amounts below "the average amount of water withdrawn annually during the historical period." *Id.*  The Authority's construction, which is inconsistent with the Texas Supreme Court's express statement, is thus unreasonable.

**B.     Whether the Authority may issue a type of permit that contains interruptible "junior" withdrawal rights**

You next ask about the Authority's power to issue a permit granting interruptible "junior" withdrawal rights. *See* Request Letter, *supra* note 2, at 2. Your letter notes that the Act does not specifically authorize such withdrawal rights. *See id.*

The Authority contends that the junior/senior rules aid in reconciling the 450,000 acre-feet withdrawal cap with the minimums articulated in section 1.16(e) of the Act. *See* Authority Brief, *supra* note 11, at 12. Moreover, the Authority suggests that its construction of the Act is reasonable and is therefore entitled to deference. *See id.* at 6–7.

The Legislature did not provide any authority in the Act generally for issuing permits with interruptible withdrawal rights unless the permits are term permits. The Act permits the Authority to issue "interruptible term permits for withdrawal" for a term not to exceed ten years. *See* Act § 1.19(a), at 2362. Term permit holders may not withdraw water from the San Antonio pool unless the aquifer level is higher than 665 feet above sea level or from the Uvalde pool unless the aquifer level is higher than 865 feet above sea level. *See id.* § 1.19(b)–(c). While the conditions on the junior permits state the same aquifer levels as the Act sets for term permits, the Authority does not refer to the junior permits as term permits, and we have no information that the permits' terms are limited to ten years or less, as term permits are required to be.

Moreover, the Act sets out a detailed permit system that provides for three types of permits—regular, term, and emergency. *See id.* §§ 1.16, .18, .19, .20, at 2361–62. Given the Act's detailed scheme, we cannot find that the Act "clearly grant[s]" the Authority power to create a new type of regular permit. *See Tri-City Fresh Water Supply Dist. No. 2*, 142 S.W.2d at 948; *accord So. Plains Lamesa R.R. v. High Plains Underground Water Conservation Dist. No. 1*, 52 S.W.3d 770, 779 (Tex. App.—Amarillo 2001, no pet.); *Lower Nueces River Water Supply Dist. v. Cartwright*, 274 S.W.2d 199, 207 (Tex. Civ. App.—San Antonio 1954, writ ref'd n.r.e.); *cf. Quincy Lee Co. v. Loda & Bain Eng'rs, Inc.*, 602 S.W.2d 262, 264 (Tex. 1980) (stating that the Bayfield Public Utility District may exercise no authority that the Legislature has not clearly granted). Nor does anything in chapter 36 or 51 of the Water Code authorize the Authority to create a new type of permit. *See* TEX. WATER CODE ANN. §§ 36.101(a), .113(a), .114(a), 51.122 (Vernon Supp. 2006), § 51.127 (Vernon 2000); *see also* Act § 1.08(a), at 2356 (providing the Authority with powers granted under chapters 36 and 51 of the Water Code). Lacking a clear grant of authority, we must conclude that the Authority has no statutory authority to issue a type of regular permit that contains interruptible junior withdrawal rights, and its construction to the contrary is unreasonable.

## S U M M A R Y

The Texas Legislature has not authorized the Edwards Aquifer Authority to reduce the withdrawal rights of irrigation users and averagers, who have received permits under section 1.16(e), sentences 4 and 5 of the Authority's enabling act. *See* Act of May 30, 1993, 73d Leg., R.S., ch. 626, § 1.16(e), 1993 Tex. Gen. Laws 2350, 2361. The Legislature also has not authorized the Authority to issue interruptible junior withdrawal rights.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee